CHANCERY.        **Tilford, &c. *vs* James' Adm'r., &c.**

*Case* 92.             ERROR TO THE FAYETTE CIRCUIT.

*Mortgages.    Substitution.    Accommodation indorsers.*
*Diligence.*

*July* 2.          CHIEF JUSTICE MARSHALL delivered the opinion of the Court.

A mortgage to secure one in his securityships for the mortgagor, may embrace suretyship existing as accommodation indorser, and its efficacy depend upon contingency of the exercise of due diligence by the creditor, in pursuing the principal, &c.

THE mortgage to Sayre not being conditioned to pay the debts in which he was surety for the mortgagor, but only to save him harmless, and indemnify him from all loss in his said suretyship, we are of opinion that the mortgage is not to be understood as an absolute security for all the debts referred to, but only for such as from the nature of Sayre's original agreement he was absolutely bound to pay if James did not. As this is the condition of a surety properly so called, it might be implied from the term surety used in the recitals and suretyship in the condition of the mortgage, that the engagement of Sayre, referred to in the recitals, and in the description of the notes in which he is said to be surety, were those of an ordinary surety, and that he was bound in all of them as a co-obligor, as a surety is ordinarily bound. But as an accommodation endorser is often called a surety, and has substantially the same rights, though not under the same obligations as an ordinary surety, we are of opinion that the recitals in the mortgage do not necessarily fix the nature of Sayre's obligation for the debts, or on the notes referred to. And that when upon the production of one of the notes, he appears not to be a co-obligor, but merely an endorser, the word surety is to be understood as indicating in that case, his character as accommodation endorser, and the word suretyship as referring to his engagement and liability in that character. The condition of the mortgage then, in such a case, is to save him harmless in his engagement and liability as accommodation endorser. But that engagement and liability are not absolute to pay the note, but are contingent, and depend upon the use of due diligence by the holder against the

maker.    And his liability to loss on account of such engagement being, therefore, also contingent, and the mortgage being only to save him from loss, there is no more room for the application or enforcement of the indemnity, when the liability to loss is discharged or removed by the failure of the creditor to use due diligence against the principal debtor, than when the same effect is produced by the debtor's paying the debt.

If the mortgagee's liability were absolute in the first instance, as in case of an ordinary surety, or if being at first contingent, as is that of an accommodation endorser, it becomes fixed by due diligence, then in either case the application of the mortgage fund to the payment of the particular debt, is apparently for the benefit of the mortgagee, and in effectuation of the purpose and intent of the mortgage.  In case of the mortgagor's insolvency, this is obvious; and the equity of the creditor to enforce a disposition of the fund alike beneficial to himself and the mortgagee, is unquestionable.    He is, therefore, substituted so far as his debt is concerned, to the rights of the mortgagee.    Whether the creditors of a mortgagor have such an interest in a mortgage taken by a surety, the co-obligor of their debtor, conditioned not for the payment of the debts, but merely for his own indemnity, as that one of them who by reason of a secret arrangement with the principal for indulgence, enables the surety to discharge himself from that debt without payment, may, notwithstanding such release of the surety, claim the application of the fund to his debt, as one secured by the mortgage, need not be decided.    We are satisfied that where, in one of the debts referred to, the original liability of the party taking such a mortgage, is contingent only as that of an endorser, he has no right himself to insist upon the application of the mortgage fund to that debt until his liability is fixed; certainly none when he is dis charged from liability without loss, and the creditor who, by his negligence in pursuing the debtor, frees the surety from all liability and danger of loss, has no more right to stand as mortgagee for his debt, than if he had released his demand.    The discharge of the endorser in such a case by negligence, is a discharge and satisfaction of the

If a mortgage be made to a surety who is only an accommodation indorser, and the mortgagor be legally proved insolvent, or the surety becomes liable by use of proper diligence on the part of the creditor, the creditor then has a right to be substituted to the place of mortgagee, and ask a foreclosure for his benefit.

TILFORD, &c.
vs
JAMES' AD'R. &c.

Where the liability of a surety taking a mortgage is contingent, as is that of an accommodation indorser, the mortgagee has no right to insist on the application of the mortgaged effects until his liability is fixed; before it is fixed, mortgagee may release the mortgage. If the surety is released by the laches of the creditor, the latter cannot ask substitution to the rights of the mortgagee.

mortgage, so far as that debt is concerned, because it takes away the contingency on which alone, according to its terms and intent, it could be enforced.

The note for which a claim is now made upon the mortgage fund is referred to in the mortgage, as one on, or in which Sayre is surety for the mortgagor to Samuel Asberry. But on production of the note it appears to be signed by the mortgagor alone, and payable to Asberry, whose name is on it as assignor to Sayre, whose name is on it as second assignor, with an assignment over it, and the note is set up by Tilford, a subsequent assignee, suing for the benefit of Asberry. Assuming that Asberry was an actual creditor, taking the note for the security of his debt, and that Sayre became a party to it at the request, and for the accommodation of the maker, the arrangement of the names as above stated, would seem to be rather unusual, and especially as Sayre stands merely as the assignee of Asberry, and the assignor, in his turn, of another. But while the recitals of the mortgage preclude the idea of any liability of Asberry to Sayre, the arrangement of the names on the note and the relation of assignor and assignee preclude any liability of Sayre to Asberry. Sayre then was only liable to subsequent assignees deriving title to the note from him. He was liable as assignor, that is, on condition of due diligence against the maker; and the mortgage secures him against loss on account of this contingent liability. That liability was subject to be extinguished without loss, by the failure to use the requisite diligence against the maker, and by its extinguishment in that mode, the mortgage itself, as an indemnity against this liability, was also extinguished. The holder of the note who could have no interest in the mortgage, except in virtue and to the extent of Sayre's liability, and in fact through Sayre, cannot possibly acquire the right of resorting to it for his own benefit, by or in consequence of the fact that his negligence has discharged the liability of Sayre, which constituted its only consideration.

It is admitted that there was not such diligence in pursuing the legal remedy upon the note, as to authorize a recovery at law against Sayre, but it is contended that as

the maker was, in fact, insolvent, and had conveyed all his property by this mortgage, and as moreover this property being mortgaged to secure this debt, could not have been reached by execution for the same debt against the mortgagor, there was, in fact, no effectual legal remedy, and a resort to the Court of equity being necessary, the action at law might be dispensed with, and relief granted in this suit. But whatever might have been said if this suit had been brought at a time when the action at law upon the note should have been brought, and when by proper diligence at law, Sayre's liability as assignor might have been fixed, (as to which we intimate no opinion,) we are satisfied that after Sayre had been completely discharged from liability at law, by the laches of the holder of the note, it was too late to claim relief in equity on this ground. The very failure to sue at law, (or in equity,) in due time, freed the mortgaged property from its subjection to this debt under the mortgage, and left the equity of redemption open to a levy for its satisfaction; and although a mortgage which has been apparently extinguished, so far as its direct objects are concerned, will be sometimes kept alive or regarded as still subsisting for the benefit of a party who has in equity acquired the rights of the mortgagee, and ought to stand in his place, we do not regard the laches of the holder of the note, whereby the mortgagee, as his assignor, is discharged, and the mortgage for his indemnity extinguished, as presenting a case for the application of this doctrine, and especially when other creditors may be thereby injured. We do not suppose that the fact that the claim on the note is now set up in behalf of Asberry, who had no direct recourse upon Sayre, constitutes any obstacle to the relief sought for his benefit. If the subsequent assignee had a right to hold Sayre liable, he might have reached the mortgage fund through Sayre, and Asberry, by payment of the debt to him, might be substituted to his rights. But when the bill was filed the subsequent assignee had lost his recourse upon Sayre, and consequently, had no interest in the mortgage which could be asserted either for his own benefit or for that of Asberry.

The claim of Cochran stands upon even weaker grounds, since the note, although referred to in the mortgage as one in which Sayre was surety, was in the same form with respect to the attitude of the parties, as that to Asberry, and on that ground was, in fact, rejected by the creditor, and was not afterwards in his possession. There was, of course, no attempt to enforce it against the maker, and it is not produced in this suit. It had been signed and endorsed when the mortgage was made, but its rejection was not then known.

Wherefore, the decree rejecting these debts as privileged claims upon the mortgage fund, is affirmed.

*Combs & Shy* for plaintiffs; *Robinson & Johnson* for defendants.